UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE OTWORTH,

              Plaintiff,                        Case No. 1:19-cv-55

v.                                          Hon. Paul L. Maloney

FIFTH THIRD BANK, *et al.*,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Clarence Otworth does not want to pay taxes assessed by the Village of Lakewood Club. To accomplish this goal, he contends that the Village does not exist, is an ongoing criminal organization or criminal enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, and has engaged in a scheme with others to collect illegal property taxes in violation of RICO. The Sixth Circuit Court of Appeals has rejected this claim, observing that, "Of all the tax avoidance schemes, this case almost certainly involves one of the strangest." *Otworth v. Budnik*, 594 Fed. Appx. 859, 860 (6th Cir. 2014). In the present case, plaintiff re-asserts this theory and has expanded his tax avoidance scheme to include taxes assessed by Dalton Township.

The present lawsuit is directed at 19 defendants, many of whom he has sued in the past: Fifth Third Bank (sometimes referred to as the "bank"); Fifth Third Bank vice-presidents Paul Allen Bixler, F.E. Troncone, P. Brian Moore, Phillip C. Bodle, Barbara A. Ibold, and, Jonathon Meade;[1] the Village of Lakewood Club (sometimes referred to as the "Village); Dalton

---

[1] Fifth Third Bank and its vice-presidents will be referred to collectively as the "Fifth Third defendants".

Township (sometimes referred to as the "Township"); Williams and Hughes (presently known as Williams Hughes, PLLC, and sometimes referred to as the "law firm"); Attorney Shon Anne Cook; Muskegon County; Muskegon County Board of Supervisors; Muskegon County Board of Commissioners;[2] Former Michigan Attorney General William Duncan Schuette; Muskegon County prosecutor D.J. Hilson; Township Treasurer Tammy Stephenson; Village Treasurer Lisa Swanson; and, Township Deputy Clerk Lori K. Hayes.

This matter is now before the Court on seven dispositive motions: a Motion to dismiss filed by defendant Schuette (ECF No. 11); a Motion to dismiss filed by defendants Muskegon County, Muskegon County Board of Supervisors, Muskegon County Board of Commissioners, and Muskegon County Prosecutor DJ Hilson (ECF No. 16); a Motion to dismiss filed by defendants Village and Lisa Swanson (ECF No. 26); a Motion to dismiss filed by defendants Williams Hughes, PLLC, and Shon Anne Cook (ECF No. 39); a Motion to dismiss filed by defendants Township, Stephenson, and Lori K. Hayes (ECF No. 84); Motion for summary judgment or for judgment on the pleadings filed by the Fifth Third Bank defendants (ECF No. 55); and a Motion for summary judgment filed by plaintiff (ECF No. 56).

## I.    Background

## A.    Summary of plaintiff's claim

Federal jurisdiction in this case is based upon plaintiff's allegation that defendants Village and Township are enterprises ("ongoing criminal organizations") which have engaged in a scheme to collect illegal property taxes in violation of RICO.  Plaintiff claims that defendants Fifth Third Bank, Bixler, Troncone, Moore, Bodle, Ibold, Meade, Swanson, Stephenson, Hayes, the law firm, and Sharon Anne Cook perform criminal acts in furtherance of the enterprise. The

---

[2] Muskegon County, its Board of Supervisors, and its Board of Commissioners will be referred to collectively as the "Muskegon County Defendants."

2

other defendants have engaged in various state law torts over the years, including nonfeasance, embezzlement, and perjury.

The gist of plaintiff's claim is set forth in ¶ 55 of his amended complaint:

Plaintiff Otworth has spent the last 14 years, and approximately $100,000, trying to obtain an opportunity for justice, but as a pro se litigant he was deprived of a fair trial in both State and Federal Courts, and despite of what opposing attorneys always claim the issue of the unconstitutional compulsory incorporation of the Village of Lakewood Club has never been litigated.

Amended Compl. (ECF No. 21, PageID.125). Assuming that there was a flaw in the creation of the Village, plaintiff cannot re-litigate that issue in this lawsuit. *See* discussion, *infra*. In 2014, the Sixth Circuit rejected plaintiff's RICO theory and held that "regardless of any alleged irregularities in Lakewood Club's initial incorporation, Otworth cannot now challenge its existence, because the community's residents and the State of Michigan have acquiesced in its existence for decades." *Budnik*, 594 Fed. Appx. at 862, citing *Stuart v. School District No. 1 of the Village of Kalamazoo*, 30 Mich. 69 (1874).

This Court stayed discovery in this case to resolve the legal sufficiency of plaintiff's complaint. *See* Order (ECF No. 124). At that time, the Court observed that:

This lawsuit is, in some ways, the fifth iteration of plaintiff's four previous unsuccessful lawsuits seeking to obtain damages under his theory that the Village of Lakewood Club does not exist. *See Otworth v. Village of Lakewood Club*, No. 1:01-cv-281 (W.D. Mich.) (village not properly incorporated in 1967); *Otworth v. Vanderploeg*, No. 1:01-cv-635 (W.D. Mich.) (two attorneys conspired to fraudulently incorporate the village); *Otworth v. Williams, Hughes & Cook, PLLC*, No. 1:11-cv-206 (W.D. Mich.) (village's incorporation was illegal and it is not authorized to collect taxes levied on plaintiff over the past 43 years); and, *Otworth v. Budnik*, No. 1:13-cv-129 (W.D. Mich.) (appealed in *Otworth v. Budnik*, No. 14-1139 (6th Cir. Nov 21,2014) (Sixth Circuit affirmed the dismissal of the case observing that "[o]f all the tax avoidance schemes, this case almost certainly involves one of the strangest").

Given the scope of plaintiff's claims and his past history of filing frivolous lawsuits in this Court, it is in the interests of both the Court and the parties to address

the numerous preliminary matters raised in the pending dispositive motions before
setting a scheduling conference.

*Id.*

### B.   Plaintiff's previous federal lawsuits

#### 1.   *Otworth v. Village of Lakewood Club*, 59 Fed. Appx. 785 (6th Cir. 2003)

In *Otworth v. Village of Lakewood Club*, plaintiff alleged that the Village violated

his federal rights in denying a site plan. This Court entered judgment against plaintiff. *See Otworth*

*v. Village of Lakewood Club*, No. 1:01-cv-281 (W.D. Mich. Aug. 7, 2002) (ECF No. 95). In

affirming the dismissal, the Sixth Circuit held that this Court did not abuse its discretion in denying

plaintiff's attempt to amend the complaint to challenge the existence of the Village:

> In order to demonstrate that the denial of his site plan was unconstitutional.
> [sic] Otworth was required to show that the denial was an arbitrary and capricious
> action that lacked any rational basis. . . The record shows that his site plan was
> rejected because he failed to submit a photograph showing a home similar to the
> one he planned to build, or an elevation drawing showing how the home would
> appear on the lot. Otworth failed to show that this requirement was irrational.
> Instead, he argues that the ordinance does not apply because the village was never
> properly incorporated. The district court did not abuse its discretion in declining to
> permit Otworth to amend his complaint to raise this claim.

*Otworth v. Village of Lakewood Club*, 59 Fed. Appx. at 786 (emphasis added).

#### 2.   *Otworth v. Vanderploeg*, 61 Fed. Appx. 163 (6th Cir. 2003)

In *Otworth v. Vanderploeg*, plaintiff alleged that the attorneys responsible for

incorporating the Village back in 1967 deprived him of his federal rights.  This Court granted

defendants' motion for summary judgment. *Otworth v. Vanderploeg*, 1:01-cv-635 (W.D. Mich.

Aug. 8, 2002) (ECF Nos. 68 and 69).  The Sixth Circuit affirmed on appeal, stating that plaintiff

could not challenge the Village incorporation which occurred decades before the filed the lawsuit:

> Seeking $200,000 in damages, Otworth sued attorneys Allan Vanderploeg
> and Harry Knudsen in October 2001. Otworth alleged that the defendants conspired
> to fraudulently incorporate the Village of Lakewood Club (Lakewood) in

Muskegon County, Michigan, in 1967. Otworth, who owns property in Lakewood, claimed that the illegal incorporation subjected him to illegal property taxes and deprived him of the use of his property. . . The district court granted summary judgment in favor of the defendants. . .

Upon review, we affirm the district court's decision for the reasons stated by the district court. The essential facts are not in dispute. Otworth's father acquired eight lots of land in Muskegon County in 1950. In 1967, Defendant Vanderploeg, an attorney acting on the behalf of some residents of Muskegon County, filed documents with the county's board of supervisors to incorporate Lakewood. Defendant Knudsen, an attorney retained by the board of supervisors, advised the board on the requirements and procedures for the incorporation. Otworth inherited the property in 1994. In 1996, he sought a building permit. The Lakewood Site Plan Review Board rejected his application. Otworth alleged that, as a result of the allegedly illegal incorporation, he has been unable to build a house on his land for the last six years and is subject to illegal property taxes, ordinances, and guidelines imposed by Lakewood.

The defendants were entitled to a judgment as a matter of law. First, Otworth's complaint was barred by the statute of limitations. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir.1986). Otworth had reason to know that he was subject to Lakewood's building restrictions, ordinances, and taxes when he inherited the Lakewood property in 1994. *See Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.1996). Moreover, he first encountered difficulty acquiring a building permit in 1996, five years before he filed suit. **Otworth's arguments that he "discovered" Lakewood's allegedly illegal incorporation in 2001 and was liable for taxes that year are without merit. He cannot bring suit in 2001 for acts that took place in 1967**.

*Otworth v. Vanderploeg*, 61 Fed. Appx. at 164-66 (emphasis added).

### 3.   *Otworth v. Williams, Hughes & Cook, PPLC*, No. 1:11-cv-206, 2011 WL 1542114 (W.D. Mich. April 21, 2011)

In *Otworth v. Williams, Hughes & Cook, PPLC*, plaintiff alleged that the Village Attorneys Williams, Hughes & Cook, PLLC, and Shon A. Cook (both defendants in the present case) engaged in perjury and collusion to conceal the fact that the Village was not incorporated. This Court summarized plaintiff's claims as follows:

Plaintiff, Clarence Otworth ("Otworth"), proceeding pro se, filed his Complaint in this case on March 2, 2011, against two attorneys, Shon Cook and Susan Franklin, their law firm, Williams, Hughes & Cook, PLLC, and the

Honorable Harold Closz, III, a state district judge of the State of Michigan 60th District Court. According to Otworth, the Village of Lakewood Club was incorporated on June 28, 1967. Otworth claims that this incorporation was illegal, however, because it was not in accordance with Michigan law. Otworth claims that because the Village was not validly incorporated, it was not authorized to collect the property taxes it has been levying on Otworth for the last 43 years. Otworth also claims that the Village illegally uses public funds for private purposes, such as to pay for the Village Clerk to take a course in basic accounting at Muskegon Community College and sponsoring essay, coloring, and best costume contests.

On October 1, 2010, Otworth filed a lawsuit in the Muskegon County Small Claims Court against Village Treasurer Lisa Swanson, alleging that the Village was not properly incorporated under Michigan law and lacked the authority to levy and collect property taxes. Defendants Cook and Franklin, who were representing Swanson, removed the case to the 60th District Court, where it was assigned to Judge Closz. Swanson thereafter filed a motion for summary disposition, which Judge Closz granted on February 9, 2011.

In the instant case, Otworth alleges in Count I that Judge Closz's decision and order dismissing the state court case was based upon false statements by Defendants Cook and Franklin and therefore violated his right to procedural due process. In Count II, Otworth alleges that the "decades of perjury and collusion committed by the Village Attorneys to conceal the fact that the Village of Lakewood Club is not incorporated" has caused him to "suffer [ ] mentally, physically, and financially." (Compl.¶ 65.)

*Otworth v. Williams, Hughes & Cook, PLLC*, 2011 WL 1542114 at *1.

This Court dismissed plaintiff's federal claims because: the Court lacked jurisdiction to plaintiff's claim challenging Judge Closz's ruling in the state court action; plaintiff failed to state a claim for violation of his due process rights; Judge Closz had absolute judicial immunity. In the absence of any federal claims, the Court declined to exercise supplemental jurisdiction over Otworth's other state law claims. *Id.* at *1-2.

The Court denied plaintiff's attempt to amend the complaint to include a RICO claim:

Finally, pointing to his Amended Complaint, Otworth contends that his reference to the Racketeer influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, saves his action from dismissal. The Court disagrees. Assuming that Otworth's Amended Complaint was properly filed pursuant to Fed.

6

R. Civ. P. 15(a)(1), his bare reference to the RICO statute is insufficient to state a claim. To state a civil RICO claim, a plaintiff must establish four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). Otworth has not even attempted to allege these elements or to link them to facts alleged in his Amended Complaint. Otworth thus has failed to state a RICO claim.

*Id.* at *2. The Sixth Circuit affirmed the decision. *See Otworth v. Willaim Hughes & Cook, PPLC*, No. 11-1589 (6th Cir. Feb. 29, 2012) (unpublished order).[3]

### 4.    *Otworth v. Budnik*, 594 Fed. Appx. 859 (6th Cir. 2014)

Plaintiff advanced his RICO claim in *Otworth v. Budnik*. *See Otworth v. Budnik*, No. 1:13-cv-129 (W.D. Mich.) (Compl.) (ECF No. 1). Plaintiff's complaint in *Budnik* was directed at Wanda Budnik (the Dalton Township Assessor) and seven of the defendants who are also defendants in this case, *i.e.*, Village Treasurer Lisa Swanson and Fifth Third vice-presidents Bixler, Troncone, Moore, Bodie, Ibold, and Meade. *Id.* This Court dismissed the complaint. On appeal, the Sixth Circuit summarized plaintiff's claim as follows:

In his complaint, Clarence Otworth alleges that the Village of Lakewood Club was falsely incorporated in 1967 and has been illegally assessing taxes on his property ever since. By collecting mortgage payments from him, Otworth asserts that Fifth Third Bank has been complicit in this illicit collection scheme.

*Otworth v. Budnik*, 594 Fed. Appx. at 860.

The Sixth Circuit set forth the legal standard applicable to plaintiff's RICO claim:

In order properly to allege a RICO claim, Otworth must show " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). "A plaintiff must allege each element" in order "to properly state a claim" upon which relief may be granted. *Id.* In addition, a plaintiff must show injury to his or her business or property. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc).

---

[3] *See Otworth v. Williams, Hughes & Cook PPLC*, 1:11-cv-206 (W.D. Mich.) (ECF No. 33) (copy of the Sixth Circuit's order).

*Id.* at 861.

The court liberally construed plaintiff's complaint as "a claim for compensatory damages based on the money Otworth was forced to pay towards property taxes levied by the Village." *Id.* That Court summarily rejected plaintiff's RICO claim:

> [I]n order to recover such damages, Otworth must show that either the Village of Lakewood Club or Fifth Third Bank engaged in a pattern of racketeering activity. Under RICO, Otworth must show that the defendants committed one of the predicate acts of racketeering, as identified in 18 U.S.C. § 1961(1)(B). Otworth's complaint is not altogether clear on this point. At various places, he alleges theft, *see* R. 1 (Complaint at ¶ 63) (Page ID # 7); unlawful threat of foreclosure, *see id.* at ¶ 94 (Page ID # 9); mortgage fraud, *see id.* at ¶ 64 (Page ID # 7); unlawful assessment, collection, and receipt of property taxes, *see id.* at ¶ 62, 109–10 (Page ID # 7, 10); and mail fraud, *see id.* at ¶ 155 (Page ID # 14). Of these charges, theft, unlawful threat of foreclosure, and mortgage fraud are not recognized as predicate acts under RICO, and can be dismissed immediately. 18 U.S.C. § 1961(1)(B); *cf. McDonald v. Schencker*, 18 F.3d 491, 495-96 (7th Cir.1994) (noting that conversion is not a per se predicate act under § 1961(1)(B), and ultimately concluding that the offense conduct "does not constitute a predicate act for purposes of RICO.").
>
> Although the unlawful collection of debt is considered a predicate offense, RICO defines "unlawful debt" as a debt "incurred or contracted in gambling activity" or "which is unenforceable under State or Federal law in whole or in part . . . because of the laws relating to usury." 18 U.S.C. § 1961(6). Otworth's complaint comes within neither category. Similarly, although mail fraud is also considered a predicate offense, Otworth's complaint is bare of any factual allegations that would render his legal claim plausible. In paragraph after paragraph, he alleges that the defendants engaged in mail fraud and racketeering, stating, for example, that "Swanson knowingly committed mail fraud every July when she mailed demands for the payment of property taxes to the people who own land in the Village of Lakewood Club." R. 1 (Complaint at ¶ 155) (Page ID # 14). Yet nowhere in his complaint does Otworth assert facts sufficient to turn his claim into a viable one.
>
> Instead, case law indicates that, regardless of any alleged irregularities in Lakewood Club's initial incorporation, Otworth cannot now challenge its existence, because the community's residents and the State of Michigan have acquiesced in its existence for decades. *See, e.g., Stuart v. Sch. Dist. No. 1 of Vill. of Kalamazoo*, 30 Mich. 69, 72-73 (1874) (describing doctrine of acquiescence and noting that "[i]f every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who

may feel disposed to question them, . . .  it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment, and mischief."). Otworth has never rebutted these points. The district court did not, in sum, err in granting defendants' motion to dismiss.

*Budnik*, 594 Fed. Appx. at 861-62.

### C.    *In re Otworth*, No. BG 15-01586, 2015 WL 5781512 (Bankr. W.D. Mich. Oct. 2, 2015)

After the Sixth Circuit rejected plaintiff's RICO claim in *Budnik*, plaintiff filed bankruptcy and attempted to use the rejected "false incorporation theory" to avoid arrearages owed on his mortgage and note owed to Fifth Third Bank (a defendant in this case).  The bankruptcy court granted Fifth Third Bank's motion to dismiss plaintiff's objection to the claim, citing *Budnik* and stating in pertinent part as follows:

> On April 15, 2015, Fifth Third filed a proof of claim in the Debtor's [Clarence M. Otworth's] chapter 13 case, $16,071.87 of which was for prepetition arrearages owed under the note and mortgage. A portion of this arrearage was incurred after Fifth Third established a tax escrow on the mortgage because the Debtor stopped making payments to two local taxing authorities, the Village of Lakewood Club and Dalton Township.
>
> The Debtor filed a "Motion for Mandatory Injunction" and numerous other pleadings (referred to collectively herein as the "Debtor's Objection to Claim"), objecting to Fifth Third's claim to the extent it represents an attempt to collect the tax liabilities. The Debtor asserts that Fifth Third's imposition of the tax escrow constitutes "collection of an unlawful debt" because the local taxing authorities, the Village of Lakewood Club and Dalton Township, "are unincorporated criminal enterprises masquerading as legitimate government municipalities." (Debtor's Response to Motion to Dismiss, Dkt. No. 126 at 1,3.)
>
> Because the Debtor does not dispute that the tax escrow was properly imposed under the terms of Fifth Third's mortgage, and **because his arguments regarding the alleged flaws in the incorporation of the local taxing authorities have been conclusively rejected in prior litigation**, the court shall grant Fifth Third's dispositive motion and shall overrule the Debtor's Objection to Claim.

*In re Otworth*, 2015 WL 5781512 at *1 (emphasis added).

The bankruptcy court found that plaintiff's claims challenging the Village's incorporation were barred by the doctrine of *res judicata*:

> In this case, all of these requirements [of *res judicata*] have been met, and it is appropriate to give preclusive effect to the findings of fact and conclusions of law in the prior federal judgments. This issue of the propriety of the Village of Lakewood Club's incorporation was raised, litigated and decided by the Sixth Circuit, when it affirmed the district court's dismissal of the Debtor's RICO claim in the prior litigation. The Sixth Circuit held that "regardless of any alleged irregularities in Lakewood Club's initial incorporation" the Debtor could not now "challenge its existence" based on the doctrine of acquiescence. *Otworth v. Budnik*, Case No. 14-1139 at 5 (6th Cir. Nov. 21, 2014) (unpublished opinion) (Dkt. No. 122, Exh. C). This determination was necessary to the Sixth Circuit's holding in the prior litigation and was incorporated into its final order on the merits. Although the litigation was dismissed based on dispositive motions filed and adjudicated before any trial was necessary, the Debtor had a full and fair opportunity to litigate his claims in both the district court and on appeal. The dismissal of the Debtor's challenges to the initial incorporation of the taxing authorities precludes relitigation of those issues in the context of the Debtor's objection to Fifth Third's claim.

*Id.* at *7 (footnote omitted).

The bankruptcy court further explained:

> The Sixth Circuit's opinion addressed the Debtor's arguments regarding the incorporation of the Village of Lakewood Club. It is not clear from the record if the court's ruling also applied to the Debtor's assertions about the flaws in Dalton Township's incorporation. Even if the Sixth Circuit opinion did not specifically address Dalton Township, and is not deemed to have preclusive effect regarding those issues, the court finds that the Sixth Circuit's reasoning would apply with equal force to Dalton Township. The parties have asserted in their pleadings that Dalton Township, like the Village of Lakewood Club, is a municipality in the State of Michigan that levies taxes on the Debtor's property. Under the doctrine of acquiescence, the Debtor may not successfully challenge the existence of Dalton Township based on an alleged failure to incorporate or asserted flaws therein.

*Id.* at fn. 11.  Ultimately, the bankruptcy court overruled plaintiff's objection and allowed Fifth Third Bank's secured claim in the amount of $60,447.71, which included the disputed arrearages. *Id.* at *7.

## II.     Subject Matter Jurisdiction

In his amended complaint, plaintiff alleged that jurisdiction is based on this Court's federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Amend. Compl. (ECF No. 21, PageID.117-118).[4]  As an initial matter, the Court does not have diversity jurisdiction in this case.

> Title 28 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is complete diversity of citizenship.  *Probus v. Charter Communications, LLC*, 234 Fed. Appx. 404, 407 (6th Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L.Ed.2d 760 (1999)). Complete diversity exists only when no plaintiff and no defendant are citizens of the same state.  *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir.2006) (citing *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir.1999)).

> The general rule is that for the purpose of determining diversity jurisdiction and removability, a corporation is deemed to be a citizen both of any state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1)

*Wolf v. Bankers Life & Casualty Co.*, 519 F. Supp. 2d 674, 678 (W.D. Mich. 2007).

Plaintiff is a citizen of Michigan.  Plaintiff has alleged that all of the defendants are located in, or reside in, Michigan, which the exception of the six vice presidents of Fifth Third Bank, and Fifth Third Bank (which is incorporated in Cincinnati, Ohio).  Plaintiff has failed to demonstrate complete diversity jurisdiction.  Accordingly, this case will proceed under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 ("civil actions arising under the Constitution, laws, or treaties of the United States").

---

[4] Plaintiff does not cite § 1332.; rather he stated that "Jurisdiction in this case is also based on diversity of citizenship and the amount in controversy."  PageID.117.

### III.  Motions brought pursuant to Fed. R. Civ. P. 12

### A.  Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

As discussed, multiple defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), which provides that a complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. In this regard, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

### B.  Motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)

The Fifth Third defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[5]  A motion for judgment on the pleadings can be brought "[a]fter the

---

[5] The Court notes that the Fifth Third defendants also moved for summary judgment pursuant to Fed. R. Civ. P. 56. However, it is unnecessary to resolve this motion because defendants are entitled to judgment on the pleadings. See discussion, *infra*.

pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Courts use the same standard to review both a motion for judgment on the pleadings and a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "The standards differ, however, in one key respect: a motion for judgment on the pleadings may not be made until after the pleadings (complaint, answer, and reply if ordered) are closed, while a motion to dismiss under Rule 12(b)(6) must be made prior to filing an answer." *Jenkins v. Livonia Police Department*, No. 13-14489, 2015 WL 5876750 at *2 (E.D. Mich. Oct. 7, 2015).

> "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973). But we "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

*JPMorgan Chase Bank, N.A.*, 510 F.3d 577 at 581-82.

The Court will address plaintiff's claims against each defendant.

**C.    Discussion**

**1.    The Village and Township**

Plaintiff alleged the following claims against these two defendants:

12.    Defendant Village of Lakewood Club (hereafter "Lakewood") is an unincorporated ongoing criminal organization that has been successfully pretending to be incorporated since June 28, 1967, so it could enact zoning ordinances, extort a village property tax, collect a share of Michigan's tax revenue, and provide themselves with a lucrative income.

13.    Defendant Dalton Township (hereafter "Dalton") is an unincorporated ongoing criminal organization that has been successfully pretending to be incorporated since 1867, so it could enact zoning ordinances, levy a township

property tax, collect a share of Michigan's tax revenue, and provide themselves with a lucrative income.

*    *    *

27.    The successful premediated fraudulent incorporation frauds of Dalton and Lakewood are violations of Michigan Constitution, the Home Rule Village Act, Public Act 278 of 1909, and the Racketeer Influenced and Organization Act (commonly referred to as RICO ACT or RICO) which is a United States federal law that provides for extended criminal penalties and a civil cause of action for acts performed as part of an ongoing criminal organization.

28.    Defendants Dalton and Lakewood have committed such unlawful acts against Otworth, and the other citizens of Dalton, as pretending to be incorporated which is fraud, mail fraud, conspiracy, extortion, perjury, embezzlement of village funds, and racketeering.

Amended Compl. (ECF No. 21, PageID.119-121).

Plaintiff's claims against the Village are barred by the doctrine of *res judicata*.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171 (2008); *see also* Restatement (Second) of Judgments §87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). This rule applies regardless of whether the prior federal-court judgment was based on federal question or diversity jurisdiction. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F. 3d 701, 708 (6th Cir. 2015) . . .

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *JZG Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). [Defendant's] motion raises issue preclusion, which "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Rawe* [*v. Liberty Mutual Fire Insurance Co.*, 462 F.3d 521, 528 n.5]. "Issue preclusion. . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171 (quotation marks and citation omitted). Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

*Merial, Inc. v. Sergeant's Pet Care Products, Inc.*, No. 1:18-cv-351, 2018 WL 5603536 at *4-5 (W.D. Mich. Oct. 30, 2018) (footnote omitted).

As discussed, the Sixth Circuit rejected plaintiff's RICO claim that the Village does not exist and operates as a criminal enterprise. *See Budnik*, 594 Fed. Appx. 859. Citing *Budnik*, the bankruptcy court rejected plaintiff's "false incorporation" theory as to both the Village and the Township. *See In re Otworth*, 2015 WL 5781512. In reaching its decision in *Budnik*, the Sixth Circuit found that plaintiff could not challenge the Village's existence "because the community's residents and the State of Michigan have acquiesced in its existence for decades." *Budnik*, 594 Fed. Appx. at 862.

Both plaintiff's RICO claim against the Village and his challenge to the Village's existence are barred by issue preclusion because: (1) plaintiff litigated his RICO claim based upon his theory that the Village did not exist and illegally levied taxes in *Budnik*; (2) the determination of the issue was necessary to the outcome in *Budnik*; (3) the prior proceeding in *Budnik* resulted in a final judgment on the merits; and, (4) the party against whom preclusion is sought (plaintiff) had a full and fair opportunity to litigate the issue in the prior proceeding. In this regard, plaintiff sought review by the United States Supreme Court, which denied his petition for certiorari. *See Otworth v. Budnik*, 575 U.S. 989, 135 S. Ct. 1905 (April 27, 2015).

Issue preclusion also bars plaintiff's RICO claim against the Township and his challenge to the Township's existence based upon the bankruptcy court's order which adopted the reasoning in *Budnik*. The bankruptcy court granted Fifth Third Bank's dispositive motion and overruled plaintiff's objection to the bank's claim "because [Otworth's] arguments regarding the alleged flaws in the incorporation of the local taxing authorities [the Village of Lakewood Club

and Dalton Township] have been conclusively rejected in prior litigation." *In re Otworth*, 2015 WL 5781512 at *1.

Independent of issue preclusion, plaintiff has failed to state a claim for relief against the Township.  Plaintiff contends that the Township does not exist, alleging that Dalton Township has been "pretending to be incorporated since 1867."  Plaintiff sets forth no facts to support this conclusory claim.  "The township is the basic political subdivision of the county."  24 Mich. Civ. Jur., Townships § 1.  The Court takes judicial notice that Dalton Township was organized on April 1, 1859 (Certification of Township, ECF No. 85-1), and that it is recognized as a township in M.C.L. § 4.2001 (listed as one of the Muskegon County Townships included in Michigan representative district 091).[6]

The Sixth Circuit's reasoning in *Budnik* that plaintiff could not challenge the existence of the Village which had been incorporated for "decades" applies with equal force to plaintiff's challenge to the existence of the Township which was organized in 1859.

> [I]n public affairs where the people have organized themselves under color of law into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can no longer be open to question.

*People v. Maynard*, 15 Mich. 463, 470 (1867).

> To require a municipal corporation, after so long an acquiescence, to defend, in a merely private suit, the irregularity, not only of its own action, but even of the legislation that permitted such action to be had, could not be justified by the principles of law, much less by those of public policy. . .  If every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to

---

[6] "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501-02 (6th Cir. 2003).

question them, and subject to dissolution, perhaps, or to be crippled in authority and powers if defects appear, however complete and formal may have been the recognition of its rights and privileges, on the part alike of the state and of its citizens, it may very justly be said that few of our municipalities can be entirely certain of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment and mischief.

*Stuart*, 30 Mich. at 73.

Furthermore, plaintiff cannot challenge the existence of the Township as part of a collateral attack buried in this private lawsuit seeking to avoid paying Township taxes. *See Connine v. Smith*, 190 Mich. 631, 637, 157 N.W. 450 (1916) (where the complainant sought to enjoin a school district's issuance of bonds, the court rejected the complainant's collateral attack challenging the validity of district's organization because "[i]t comes within the general principle that acts of a municipal corporation may not be resisted by showing the irregularity of its organization").

Finally, plaintiff cannot maintain a RICO claim against either the Village or the Township because the municipalities lack the ability to form criminal intent. As one court explained:

Here, plaintiff has failed to state a RICO claim upon which relief can be granted against the municipal defendants because those defendants cannot form the specific intent necessary to establish a RICO claim. While the Sixth Circuit has not directly ruled on this issue, an unpublished Sixth Circuit case and district courts within the Sixth Circuit have all held that a RICO claim cannot be established against a municipality because a municipality cannot form the specific intent necessary to establish a RICO claim. *See Call v. Watts*, No. 97-5406, 1998 WL 165131, at \*2 (6th Cir. Apr. 2, 1998) (*per curiam*) (stating that counties cannot form the requisite *mens rea* ); *McGee v. City of Warrensville Hts.*, 16 F.Supp.2d 837, 848 (N.D. Ohio 1998) (stating that "a municipality is incapable of forming the specific intent associated with the underlying predicate acts of fraud"); *County of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1283 (E.D.Mich.1992) (Gadola, J.) ("Upon the weight of authority, this court holds that a municipal corporation cannot form the requisite criminal intent and cannot be held liable under the civil RICO laws."); *Hicks Properties, LLC v. Cincinnati Metropolitan Housing Authority*, No. 1:09-CV-21, 2009 WL 2591679, \*2 (S.D. Ohio Aug.20,

2009) (Dlott, C.J.) (holding that a "RICO claim cannot be established against a municipality because a municipality cannot form the specific intent necessary to establish a RICO claim"); *Anderson v. Collins*, No. 2:96-CV-269, 1998 WL 1031496, *3 (E.D. Ky. July 14, 1998) (Coffman, J.) ("Even though they may be "persons," Boone County and the Boone County Planning Commission cannot be subject to liability under RICO because, as governmental entities, they cannot form the specific intent necessary to commit the predicate offenses.").

*Cargile v. Michigan*, No. CIV.A. 10-10072, 2010 WL 3222024 at *6 (June 18, 2010), R&R adopted, 2010 WL 3222021 (E.D. Mich. Aug. 13, 2010).

In summary, plaintiff cannot challenge the existence of either the Village or the Township. *See Budnik*, 594 Fed. Appx. at 862; *In re Otworth*, 2015 WL 5781512 at *1, *7; *Stuart*, 30 Mich. at 72-73; *Maynard*, 15 Mich. at 470.  Plaintiff cannot claim that these municipalities, which have existed since 1967 and 1859, respectively, are criminal enterprises under RICO. Accordingly, plaintiff's RICO claims against defendants Village of Lakewood Club and Dalton Township and his challenge to the existence of these two municipalities should be dismissed.

### 2.    Fifth Third defendants

Plaintiff alleged that the Fifth Third defendants violated RICO.  Plaintiff identified defendant Fifth Third Bank as his mortgage lender and "an agent of the ongoing criminal organizations of Dalton and Lakewood" who engaged in a pattern of racketeering activity because the bank "collected unlawful debts from Otworth for alleged delinquent property taxes that Dalton and Lakewood said Otworth owed by taking his money from his mortgage payments, and then charging him late fees."  *Id.* at PageID.118, 121-122.  Plaintiff also named five vice-presidents of the bank, defendants Bixler, Troncone, Moore, Bodle, Ibold, and Meade, claiming that they are agents of the two "ongoing criminal organizations". *Id.* at PageID.118, 122-123.  Plaintiff's RICO claims against the Fifth Third defendants fail because neither the Village nor the Township are

criminal enterprises.  Accordingly, defendants Fifth Third Bank, Bixler, Troncone, Moore, Bodle, Ibold, and Meade should be granted judgment on the pleadings.

### 3.    Williams and Hughes law firm and Attorney Cook

Plaintiff alleged that defendant Williams and Hughes law firm, "originally the law firm of Williams, Hughes & Cook . . . successfully represented the unincorporated ongoing criminal organization of the Village of Lakewood Club for years by declaring under penalty of perjury that it was incorporated." *Id.* at PageID.120. Plaintiff alleged that the law firm "is an agent of the ongoing criminal organization of Lakewood" and "has helped it to stay in business so it could continue swindling Otworth and the other residents of Dalton by declaring it to be an incorporated village; which is perjury." *Id.* at PageID.123.   Plaintiff also alleged that defendant Shon Anne Cook, a former partner in the law firm, "repeatedly committed perjury to the detriment of Otworth and hundreds of others by declaring Lakewood to be an incorporated village" and acting "an agent of the ongoing criminal organization of Lakewood." *Id.* at PageID.120, 123.  In this regard, defendant Cook "wrote a legal brief that persuaded Muskegon County Judge Harold F. Closz to believe Lakewood was incorporated" and obtained a judgment lien in favor of the Village and against Otworth in the amount of $3,310.00. *Id.* at PageID.123-124.   Plaintiff also alleged that defendant Cook also "received village funds from Lisa Swanson, the treasurer of Lakewood, so she could attend a seminar; which is a crime." *Id.* at PageID.124.

Plaintiff's RICO claims against defendants law firm and Cook fail because the neither the Village nor the Township are criminal enterprises.  Accordingly, the RICO claims against these defendants should be dismissed.  The Court will address plaintiff's state law claim that defendant Cook illegally used Village funds in § VI, *infra*.

### 4.    Tammy Stephenson

Plaintiff alleged that Dalton Township Treasurer Tammy Stephenson "commits the federal crime of mail fraud twice a year" because "[s]he unlawfully pretends that Dalton Township is incorporated, a Michigan Municipality, and sends a bill for township property taxes to Otworth and the other citizens of Dalton which she has no authority to levy or collect." *Id*. at PageID.121, 125. Plaintiff appears to use his cursory allegation of "mail fraud" as one of the predicate acts of racketeering to support his RICO claim. Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's claim against defendant Stephenson should be dismissed.

### 5.    Lisa Swanson

Plaintiff alleged that Village Treasurer Lisa Swanson "has repeatedly embezzled village funds and given them to friends and fellow employees for personal expenditures such as school tuition and prizes for contests; which is a crime" and that Swanson commits crimes by giving Village funds and selling village property to employees and friends. *Id*. at PageID.121, 124-125. In addition, Swanson "commits the federal crime of mail fraud once a year" because "[s]he unlawfully pretends that Lakewood is incorporated, a Michigan Municipality, and sends a bill for village property taxes to Otworth and the other citizens of Dalton which she has no authority to levy or collect." *Id*. Plaintiff includes a cursory allegation of "mail fraud" to create a predicate act of racketeering for his RICO claim (as he did in *Budnik*). Plaintiff's RICO claim fails because neither the Village nor the Township are criminal enterprises. Accordingly, plaintiff's RICO claim against defendant Swanson should be dismissed. The Court will address plaintiff's state law claims of embezzlement and improperly handling Village funds and real estate in § VI, *infra*.

### 6.      Lori K. Hayes

Plaintiff alleged that Dalton Township Deputy Clerk Lori K. Hayes "falsely billed Otworth $69.45 on the 14th day of December, 2018."  *Id*. at PageID.121, 125.  Plaintiff appears to claim that Hayes violated RICO by collecting an unlawful debt for the Township.  Plaintiff's claim fails because neither the Village nor the Township are criminal enterprises.   Accordingly, plaintiff's claim against defendant Hayes should be dismissed.

### 7.      Muskegon County defendants

Plaintiff identified the three Muskegon County defendants as follows: Muskegon County ("a County in Western Michigan"); Muskegon County Board of Supervisors ("a civil administrative unit of local government in Muskegon, Michigan"); and, the Muskegon County Board of Commissioners ("a civil administrative unit of local government in Muskegon, Michigan."  *Id.* at PageID.120.

Plaintiff alleged that defendant Muskegon County created the Board of Supervisors, "failed to hold an election on the question of incorporation in violation of Michigan's Constitution and the Home Rule Village Act, Public Act 278 of 1909", and "unlawfully allowed Lakewood to pretend to be incorporated and hold an election for officers for offices that did not exist, and could not exist because it was not incorporated."  *Id.*  at PageID.124.

Plaintiff alleged that defendant Muskegon County Board of Supervisors "violated Michigan's Constitution and the Home Rule Village Act, Public Act 278 of 1909, and unlawfully compulsorily incorporated 2.06 square miles of land in the northwest section of Dalton and declared it to be an incorporated village to be known as Lakewood."  *Id.*  at PageID.124.

Plaintiff alleged that defendant Muskegon County Board of Commissioners "is the Muskegon County Board of Supervisors, it just changed its name," and that "[i]t compulsorily

incorporated Lakewood and perpetrated a premeditated fraud that affected Otworth and other Dalton citizens, and changing its name does not exonerate it from guilt," and it "knows compulsory incorporations are unconstitutional in Michigan, but it allows Lakewood to swindle Otworth and the other residents of Dalton by pretending it is incorporated." *Id*. at PageID.124.

Plaintiff does not allege that the Muskegon County defendants are subject to liability under RICO. Rather, he claims that these three defendants engaged in a fraud when they allowed the Village to be incorporated in 1967 and have allowed it to operate illegally for more than 50 years. Because plaintiff cannot challenge the validity of the Village's incorporation. *Budnik*, 594 Fed. Appx. at 862. He has no basis to claim that the Muskegon County defendants engaged in unlawful conduct or fraud with respect to the incorporation and continued operation of the Village. Accordingly, plaintiff's claims against defendants Muskegon County, Muskegon County Board of Supervisors, and Muskegon County Board of Commissioners should be dismissed.

### 8.     Defendant Schuette

Plaintiff alleged that defendant Schuette, the former Michigan Attorney General, "refused to put Lakewood out of business because he would have to also arrest and prosecute his friends for perjury, the attorneys that represented Lakewood," and "pretended Lakewood was incorporated, because it adopted the amended Act as its village charter, and proclaimed that it was a General Law Village; which was both fraud and perjury." *Id*. at PageID.120, 125. Plaintiff cannot challenge the validity of the Village's incorporation. *Budnik*, 594 Fed. Appx. at 862. He has no basis to claim that defendant Schuette engaged in "fraud and perjury" by "pretending" that the Village was incorporated. Accordingly, plaintiff's state law claims against defendant Schuette should be dismissed.

### 9.      D. J. Hilson

Plaintiff alleged that defendant Muskegon County Prosecutor D.J. Hilson is liable for "nonfeasance" because "[h]e refused to put Dalton and Lakewood out of business because he would have to prosecute his friends for perjury, the attorneys that represented Dalton and Lakewood" and "pretends" that "Lakewood was a General Law village." *Id*. at PageID.120, 125. Plaintiff cannot challenge the existence of either the Village or the Township. He has no basis to claim that defendant Hilson engaged in nonfeasance for failing to prosecute individuals who represent either the Village or the Township. Accordingly, plaintiff's state law claims against defendant Hilson should be dismissed.[7]

### V.      Plaintiff's motion for summary judgment

Plaintiff has moved for summary judgment against all defendants pursuant to Fed. R. Civ. P. 56.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)

---

[7] Because plaintiff's claim contesting the existence of the Village is meritless, the Court will not address defendant Hilson's claim of prosecutorial immunity.

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'
burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to
> support the nonmoving party's case.  Once the moving party has met its burden of
> production, the nonmoving party cannot rest on its pleadings, but must present
> significant probative evidence in support of the complaint to defeat the motion for
> summary judgment. The mere existence of a scintilla of evidence to support
> plaintiff's position will be insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment,
the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving
party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff's motion for summary judgment is nothing more than a sentence asking
"the Court to enter an order for summary judgment, for the plaintiff and against all defendants, on
the ground that there is no genuine issue as to any material fact, and the plaintiff is entitled to
summary judgment as a matter of law."  Motion (ECF No. 56, PageID.509).  Plaintiff's motion
consists of a 120-paragraph "Affidavit" containing a collection of statements related to plaintiff's
conduct, legal conclusions, allegations of criminal activity, arguments, questions, and speculation
PageID.509-523, and attachments which include two 120-paragraph documents entitled
"Statement of Indisputable Facts" (ECF Nos. 56-1 and 56-2) (which are similar to the affidavit),
85 unanswered requests for admission of facts directed to "each defendant" (ECF No. 56-3), and
a copy of the amended complaint for racketeering dated February 28, 2019 (ECF No. 56-4).

Plaintiff provides no legal argument addressing his claims, having failed to file a
supporting brief as required by W.D. Mich. LCivR 7.1(a).  The "affidavit" and statement, which
plaintiff verified "to the best of my knowledge, information, and belief", are not sufficient to

support a motion for summary judgment.[8]  A party's statement made "to the best of my knowledge, information and belief" does not demonstrate personal knowledge and cannot create genuine issues of fact for purposes of a summary judgment motion.  *Kiplinger v. Selene Finance, LP*, No. 1:15-cv-105, 2015 WL 9255564 at *3 (W.D. Mich. Dec. 18, 2015).[9]

These deficiencies aside, by failing to file a supporting brief, plaintiff has avoided addressing his baseless legal claims. Plaintiff's motion for summary judgment fails for two reasons.  First, plaintiff's challenges to the existence of the Village and Township have been rejected in previous court decisions and are barred by *res judicata*.  Second, plaintiff cannot challenge the existence of either the Village or the Township because their residents and the State of Michigan have acquiesced in their existence since 1967 and 1859, respectively.  *See Budnik*, 594 Fed. Appx. at 862; *In re Otworth*, 2015 WL 5781512 at *1, *7; *Stuart*, 30 Mich. at 72-73; *Maynard*, 15 Mich. at 470.  Accordingly, plaintiff's motion for summary judgment should be denied.

## VI.    State law claims

The Court resolved a number of state law claims raised by plaintiff which arise from his claims that the Village and Township do not exist.  Plaintiff has raised separate claims

---

[8] Plaintiff's unnotarized papers are not affidavits.  It appears that plaintiff attempted to verify his statements pursuant to 28 U.S.C. § 1746.  To qualify as an unsworn declaration under that statute, a statement must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".  28 U.S.C. § 1746(2).  Here, plaintiff's statements did not comply with the statute because he did not verify that the statements were "true and correct."  Rather, plaintiff diluted that statutory language by referring to the statements as true "to the best of my knowledge, information, and belief."  PageID.543, 560.

[9] *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d. Cir. 2009) ("the common expression 'to the best of my knowledge'  .  .  .  seems to inject a level of uncertainty into just how sure the declarer is of the truth of the asserted fact"); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by Fed. R. Civ. P. 56(e)"); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment"); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir. 1988) (statements in an affidavit made "upon information and belief" have "no probative value and may not be considered in a motion for summary judgment").

against Village Treasurer Swanson for embezzlement and mishandling Village property, and Attorney Cook for improperly using Village funds.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.*  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Plaintiff's state law claims that Village funds were embezzled or used for inappropriate purposes are inconsistent with his federal claim that the Village does not exist.  The merits of these claims involving Village funds, as well as the issue of whether plaintiff has standing to bring such claims, are matters of state law which should be addressed by the state courts.  Accordingly, plaintiff's remaining state law claims against defendants Swanson and Cook should be dismissed without prejudice.

## VII.    RECOMMENDATION

For these reasons, I respectfully recommend that the motions to dismiss filed by defendant Schuette (ECF No. 11), defendants Muskegon County, Muskegon County Board of Supervisors, Muskegon County Board of Commissioners, and Muskegon County Prosecutor DJ Hilson (ECF No. 16), and defendants Dalton Township, Stephenson, and Lori K. Hayes (ECF No. 84) be **GRANTED**.

I further recommend that the motion to dismiss filed by defendants Village of Lakewood Club and Lisa Swanson (ECF No. 26) be **GRANTED** as to all claims except for the state law claims that defendant Swanson embezzled and mishandled Village property.

I further recommend that the motion to dismiss filed by defendants Williams Hughes, PLLC, and Shon Anne Cook (ECF No. 39) be **GRANTED** as to all claims except the state law claim that defendant Cook improperly used Village funds.

I further recommend that the motion for judgment on the pleadings filed by defendants Fifth Third Bank, Bixler, Troncone, Moore, Bodle, Ibold, and Meade (ECF No. 55) be **GRANTED**.

I further recommend that plaintiff's motion for summary judgment (ECF No. 56) be **DENIED**.

I further recommend that plaintiff's state law claims against defendants Swanson and Cook be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this action be **DISMISSED**.

Dated:  January 29, 2020                    /s/ Ray Kent
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).